IN THE SUPREME COURT OF NORTH CAROLINA

No. 360PA15

Filed 21 December 2016

STATE OF NORTH CAROLINA

v.

JORGE JUAREZ

On discretionary review pursuant to N.C.G.S. § 7A-31 of a unanimous decision of the Court of Appeals, ___ N.C. App. ___, 777 S.E.2d 325 (2015), finding no error in part and reversing in part and remanding a judgment entered on 6 June 2014 by Judge Robert H. Hobgood in Superior Court, Wake County. Heard in the Supreme Court on 30 August 2016.

*Roy Cooper, Attorney General, by I. Faison Hicks, Special Deputy Attorney General, for the State-appellant.*

*Glenn Gerding, Appellate Defender, by Emily H. Davis, Assistant Appellate Defender, for defendant-appellee.*

BEASLEY, Justice.

We consider whether the Court of Appeals erred in reversing the trial court's judgment based upon defendant's conviction for first-degree felony murder and remanding this case to the trial court for a new trial. The Court of Appeals held that the trial court committed reversible error by failing to instruct the jury on the lesser-included offenses of second-degree murder and voluntary manslaughter, and that the trial court committed plain error when it instructed the jury on the aggressor doctrine

of self-defense. For the reasons stated herein, we reverse the decision of the Court of Appeals and reinstate the jury's verdict and the trial court's judgment.

This case involves events surrounding the death of Alfonzo Canjay (Canjay) in the early morning hours of 31 October 2012. On the evening of 30 October 2012, Jorge Juarez (defendant) and four acquaintances—Marcos Chaparro (Chaparro), Karen Gonzalez (Gonzalez), Erick Martinez (Martinez), and Karina Rodriguez (Rodriguez)—were drinking beer and smoking marijuana at Chaparro's Durham residence. Around 11:30 p.m., the group left Durham in Chaparro's Acura to drive Rodriguez home to Foxhall Village in Raleigh. The group arrived at Rodriguez's residence at around 12:00 a.m. on 31 October. After dropping off Rodriguez, Chaparro and Martinez decided to steal car stereos from vehicles parked at Foxhall Village, while Gonzales and defendant waited in the Acura.

As Chaparro and Martinez searched for car stereos to steal, the noises awoke Canjay and his wife, who looked outside and saw the two men peering into the family's car and trying to steal things. Upon being discovered, Chaparro and Martinez ran away to find Gonzalez and defendant. Once the four reunited, either Chaparro or Martinez insisted Gonzales drive back toward Canjay's house to retrieve a stereo they had hidden nearby before leaving Foxhall Village.

Meanwhile, Canjay got in his car and began searching for the men, while his wife and daughter unsuccessfully tried to call the police. Canjay saw the Acura as it

neared the main office at the complex, and he drove toward it from the opposite direction such that Gonzalez had to swerve to go around his vehicle. Canjay turned his vehicle around to pursue the Acura and pulled up to its passenger side, making two separate sideswipe contacts with the Acura. After the second impact, defendant fired one shot from his handgun into the driver's side of Canjay's vehicle. The shot struck Canjay in the heart, killing him. Gonzales then drove the group back to Durham.

On 8 April 2013, defendant was indicted for the first-degree murder of Alfonzo Canjay. The State proceeded against defendant on the theory of felony murder based on the underlying felony of discharging a firearm into an occupied vehicle while it was in operation. The trial court denied defendant's motion to dismiss at the close of the State's evidence and again at the close of all of the evidence. The trial court also denied defendant's request for instructions on the lesser-included offenses of second-degree murder and voluntary manslaughter. The trial court instructed the jury on perfect self-defense including the aggressor doctrine; defendant did not object to this instruction. The jury found defendant guilty of first-degree felony murder, and the trial court sentenced him to life imprisonment without parole. Defendant appealed.

On appeal defendant argued that the trial court (i) erred in denying his motion to dismiss; (ii) erred in denying his request for instructions on the lesser-included offenses of second-degree murder and voluntary manslaughter; and (iii) erred in

instructing the jury that perfect self-defense was unavailable if defendant was the initial aggressor. The Court of Appeals held that the trial court did not err in denying defendant's motion to dismiss, *State v. Juarez,* ___ N.C. App. ___, ___, 777 S.E.2d 325, 328 (2015), but did err by not instructing the jury on the lesser-included offenses and also erred by instructing on the aggressor doctrine of self-defense, *id.* at ___, ___, 777 S.E.2d at 330, 331.

We allowed the State's petition for discretionary review of the Court of Appeals' decision regarding the trial court's two alleged errors. Before this Court the State argues that the Court of Appeals erred in concluding that the trial court should have given jury instructions on second-degree murder and voluntary manslaughter as lesser-included offenses of first-degree murder. The State also argues that the Court of Appeals erred in concluding that the trial court's instruction on the aggressor doctrine amounts to plain error. We agree on both counts.

First, we consider whether the Court of Appeals correctly concluded that the trial court erred in not instructing the jury on the lesser-included offenses. The court held that it was error not to instruct on the lesser-included offenses because the evidence was conflicting as to whether defendant acted in self-defense when he shot into Canjay's vehicle, which could render him not guilty of first-degree felony murder, and there was sufficient evidence to support a lesser-included offense. *Id.* at ___, 777 S.E.2d at 331. The Court of Appeals' reasoning was incorrect.

Felony murder is a murder "committed in the perpetration or attempted perpetration of any arson, rape or a sex offense, robbery, kidnapping, burglary, or other felony committed or attempted with the use of a deadly weapon." N.C.G.S. § 14-17 (2015). This statute expresses the legislature's deliberate policy choice to hold individuals accountable "for deaths occurring during the commission of felonies," regardless of whether the murder was intentional or unintentional. *State v. Bell*, 338 N.C. 363, 386, 450 S.E.2d 710, 723 (1994), *cert. denied*, 515 U.S. 1163, 115 S. Ct. 2619 (1995). Because "the purpose of the felony murder rule is to deter even accidental killings from occurring during the commission of a dangerous felony," self-defense is not a defense to felony murder. *State v. Richardson*, 341 N.C. 658, 668, 462 S.E.2d 492, 499 (1995).

Perfect self-defense, however, may be a defense to the underlying felony, which would thereby defeat the felony murder charge, *id.* at 668-69, 462 S.E.2d at 499, as well as any other homicide charge, s*ee, e.g.*, *State v. Bush*, 307 N.C. 152, 158, 297 S.E.2d 563, 568 (1982) ("Perfect self-defense excuses a killing altogether. . . ."). Perfect self-defense is a right that "rests upon necessity" to save one's self and is "only available to a person who is without fault," thus excusing a defendant altogether. *State v. Marsh*, 293 N.C. 353, 354, 237 S.E.2d 745, 747 (1977). If a person cannot establish perfect self-defense, but can establish imperfect self-defense,[1] that person's

_____

[1] Perfect self-defense requires the existence of all four of the following elements:
(1) [I]t appeared to defendant and he believed it to be

actions are not excused and he is still at fault, though to a lesser degree. *See State v. Crisp*, 170 N.C. 785, 792, 87 S.E. 511, 514-15 (1916) (explaining that perfect self-defense is only available "where the party . . . was wholly free from wrong or blame," whereas if a party "was in the wrong . . . then the law justly limits his right of self-defense, and regulates it according to the magnitude of his own wrong" (quoting *Reed v. State*, 11 Tex. Ct. App. 509, 517-18 (1882))). Therefore, imperfect self-defense is not available as a defense to the underlying felony utilized to support a felony murder charge because allowing for such a defense, when the defendant is in some manner at fault, would defeat the purpose of the felony murder rule. *Richardson*, 341 N.C. at 668, 462 S.E.2d at 499.

Here, if defendant acted in perfect self-defense when he shot into Canjay's vehicle, the killing would be excused and defendant absolved of any fault. *Bush*, 307

---

necessary to kill the deceased in order to save himself from death or great bodily harm; and

    (2) [D]efendant's belief was reasonable in that the circumstances as they appeared to him at the time were sufficient to create such a belief in the mind of a person of ordinary firmness; and

    (3) [D]efendant was not the aggressor in bringing on the affray, i.e., he did not aggressively and willingly enter into the fight without legal excuse or provocation; and

    (4) [D]efendant did not use excessive force, i.e., did not use more force than was necessary or reasonably appeared to him to be necessary under the circumstances to protect himself from death or great bodily harm.

*Bush*, 307 N.C. at 158-59, 297 S.E.2d at 568 (quoting *State v. Norris*, 303 N.C. 526, 530, 279 S.E.2d 570, 572-73 (1981) (italics omitted)). Imperfect self-defense is available when elements (1) and (2) listed above are met, but either the defendant "was the aggressor or used excessive force." *Id.* at 159, 297 S.E.2d at 568.

N.C. at 158, 297 S.E.2d at 568. Only under a theory of imperfect self-defense could defendant be found guilty of a lesser degree of homicide. *See id.* at 159, 297 S.E.2d at 568 (stating that when a defendant shows "only that he exercised the imperfect right of self-defense," instead of perfect self-defense, he "remain[s] guilty of at least voluntary manslaughter"). Allowing jury instructions on the lesser-included offenses of second-degree murder and voluntary manslaughter would permit the jury to find defendant not guilty of felony murder while at the same time finding defendant was, in some manner, at fault for shooting into Canjay's vehicle—the underlying felony in question. This outcome would undermine the imperfect self-defense limitation set out in *Richardson* and the purpose of the felony murder rule. Therefore, the trial court was correct to deny defendant's request for instructions on second-degree murder and voluntary manslaughter.

The Court of Appeals' and defendant's reliance on *State v. Millsaps*, 356 N.C. 556, 572 S.E.2d 767 (2002), is misguided, as is defendant's further reliance on *State v. Thomas*, 325 N.C. 583, 386 S.E.2d 555 (1989), and *State v. Camacho*, 337 N.C. 224, 446 S.E.2d 8 (1994). In *State v. Millsaps* this Court explained that when the State prosecutes a defendant for first-degree murder solely on a felony murder theory, a trial court must instruct on lesser-included offenses when the evidence of the underlying felony is in conflict and the evidence would support a lesser-included offense. 356 N.C. at 565, 572 S.E.2d at 773 (citing *Thomas*, 325 N.C. 583, 386 S.E.2d 555). The trial court is not required to instruct on lesser-included offenses if the

evidence of the underlying felony is not in conflict and all the evidence supports felony murder. *Id.* at 565, 572 S.E.2d at 774 (citing *State v. Covington*, 290 N.C. 313, 226 S.E.2d 629 (1976)). Here evidence of the underlying felony is not in conflict and the evidence does not rationally support the lesser-included offenses.

In *Thomas* the State prosecuted the defendant for first-degree murder on the theory of felony murder, which rested on the theory that the defendant acted in concert with the passenger in her car. 325 N.C. at 594-95, 386 S.E.2d at 561.

> In order to convict defendant . . . of first degree felony murder the State was required to offer evidence that, among other things, defendant did act in concert with [her passenger] when he committed the underlying felony of discharging a firearm into the [victim's] residence. If there is conflicting evidence on this aspect of the case, *i.e.*, evidence that defendant did not act in concert with [her passenger] and, therefore, did not commit the underlying felony, then defendant is entitled to an instruction on whatever degree of homicide less than first degree murder the evidence supports.

*Id.* at 595, 386 S.E.2d at 562 (citing *State v. Williams*, 284 N.C. 67, 199 S.E.2d 409 (1973)). This Court determined that there was conflicting evidence regarding whether the defendant shared a common purpose or plan with her passenger. *Id.* at 596-98, 386 S.E.2d at 562-63. The State's evidence tended to show that she was acting in concert with the passenger, while other evidence indicated that the defendant did not know that her passenger had a gun or was going to shoot it. *Id.* at 597, 386 S.E.2d at 563. Thus, "the trial court's failure to instruct the jury on the

lesser included offense of involuntary manslaughter" when the evidence would support such a conviction was reversible error. *Id.* at 599, 386 S.E.2d at 564.

Similarly, in *Camacho* the State prosecuted the defendant for first-degree murder on the theory that the defendant was lying in wait for the victim. 337 N.C. at 227, 446 S.E.2d at 9. This Court determined that the evidence was conflicting regarding whether the crime was committed by means of lying in wait. *Id.* at 231, 446 S.E.2d at 12. The State's evidence tended to show that the defendant was lying in wait, while the defendant's evidence tended to show that he was in the victim's room only to retrieve personal belongings. *Id.* at 232, 446 S.E.2d at 12. Thus, the trial court's failure to instruct the jury on second-degree murder and involuntary manslaughter when the evidence would support such a conviction was error. *Id.* at 234-35, 446 S.E.2d at 14.

As these cases demonstrate, the conflicting evidence must relate to whether defendant *committed* the crime charged, not whether defendant was legally *justified* in committing the crime. *See Camacho*, 337 N.C. at 231-32, 446 S.E.2d at 12; *Thomas*, 325 N.C. at 598, 386 S.E.2d at 563; *see also State v. Gause*, 227 N.C. 26, 30, 40 S.E.2d 463, 466 (1946) (finding that the evidence conflicted as to whether the defendant was lying in wait; therefore, the trial court erred by not instructing the jury on second-degree murder).

Here there is no conflict in the evidence regarding whether defendant committed the underlying felony of discharging a firearm into an occupied vehicle while it was in operation.[2]  The Court of Appeals aptly notes that "[t]here is no question that this transpired.  Defendant fired a gun into Canjay's vehicle while Canjay was driving it." *Juarez*, ___ N.C. App. at ___, 777 S.E.2d at 331.  Defendant does not dispute that he *committed* this crime.  Rather, defendant claims that his conduct was *justified* because he was acting in self-defense.  While the evidence regarding whether defendant acted in self-defense is in conflict, there is no conflict in the evidence regarding whether defendant discharged a firearm into Canjay's vehicle while Canjay was driving it.  Thus, the evidence that defendant committed the underlying felony is not in conflict.

Moreover, in *Millsaps* this Court reiterated that "[a]n instruction on a lesser-included offense must be given only if the evidence would permit the jury rationally to find defendant guilty of the lesser offense and to acquit him of the greater."  356 N.C. at 561, 572 S.E.2d at 771 (citing *State v. Conaway*, 339 N.C. 487, 514, 453 S.E.2d 824, 841, *cert. denied*, 516 U.S. 884, 116 S. Ct. 223 (1995)).  Here the jury could not rationally find defendant guilty of the lesser-included offenses of second-degree murder or voluntary manslaughter and acquit him of the greater offense of first-

___

[2] The elements of discharging a firearm into an occupied vehicle while in operation are (1) willfully and wantonly discharging (2) a firearm (3) into an occupied vehicle (4) that is in operation.  N.C.G.S. § 14-34.1(b) (2015).

degree murder. As discussed above, because defendant was prosecuted on the basis of a felony murder theory, he could only be acquitted of first-degree murder if the jury found he acted in perfect self-defense regarding the underlying felony. If defendant acted in perfect self-defense, a jury could not find him guilty of the lesser-included offenses of second-degree murder or voluntary manslaughter because "[p]erfect self-defense excuses a killing altogether." *Bush*, 307 N.C. at 158, 297 S.E.2d at 568. Therefore, the Court of Appeals erred in concluding that the trial court should have instructed on the lesser-included offenses.

Next, we consider whether the Court of Appeals correctly concluded that the trial court erred when it instructed the jury on the aggressor doctrine of self-defense. Because defendant did not object to the instruction as given at trial, we consider whether this instruction constitutes plain error. *See* N.C. R. App. P. 10(a)(4); *see also State v. Lawrence*, 365 N.C. 506, 512, 723 S.E.2d 326, 330 (2012).

The plain error standard requires a defendant to "demonstrate that a fundamental error occurred at trial. To show that an error was fundamental, a defendant must establish prejudice—that, after examination of the entire record, the error 'had a probable impact on the jury's finding that the defendant was guilty.' " *Lawrence*, 365 N.C. at 518, 723 S.E.2d at 334 (internal citation omitted) (quoting *State v. Odom*, 307 N.C. 655, 660, 300 S.E.2d 375, 378 (1983)). "[P]lain error is to be 'applied cautiously and only in the exceptional case' " in which a defendant can show

that the prejudicial error is "one that 'seriously affect[s] the fairness, integrity or public reputation of judicial proceedings.' " *Id.* at 518, 723 S.E.2d at 334 (alteration in original) (quoting *Odom*, 307 N.C. at 660, 300 S.E.2d at 378). For plain error to be found, it must be probable, not just possible, that absent the instructional error the jury would have returned a different verdict. *Id.* at 518, 723 S.E.2d at 334.

Here, when the trial court instructed the jury on perfect self-defense, it included instructions on the aggressor doctrine—that a defendant is not entitled to the benefit of self-defense if he was the aggressor in the situation. *See Marsh*, 293 N.C. at 354, 237 S.E.2d at 747 (describing the aggressor element of self-defense). When there is no evidence that a defendant was the initial aggressor, it is reversible error for the trial court to instruct the jury on the aggressor doctrine of self-defense. *See State v. Washington*, 234 N.C. 531, 535, 67 S.E.2d 498, 501 (1951); *see also State v. Jenkins*, 202 N.C. App. 291, 297, 688 S.E.2d 101, 105-06 (citations omitted), *disc. rev. denied*, 364 N.C. 245, 698 S.E.2d 665 (2010). On appeal the Court of Appeals determined there was no evidence that defendant was the aggressor in the situation, and thus, it was error to instruct on the aggressor doctrine. The Court of Appeals, however, failed to analyze whether such error had the type of prejudicial impact that "seriously affect[ed] the fairness, integrity or public reputation of [the] judicial proceeding." *Lawrence*, 365 N.C. at 518, 723 S.E.2d at 334 (quoting *Odom*, 307 N.C. at 660, 300 S.E.2d at 378). Therefore, the court's analysis was insufficient to conclude that the alleged error rose to the level of plain error.

On review, it is not necessary for this Court to decide whether an instruction on the aggressor doctrine was improper, because defendant failed to show that the alleged error was so fundamentally prejudicial as to constitute plain error. For defendant to meet his burden under *Lawrence*, he would have to show that, absent the erroneous instruction, it is probable that the jury would have found that he acted in perfect self-defense. To find that defendant acted in perfect self-defense, the jury would have to find that defendant honestly believed his actions of shooting into an occupied car were necessary to protect himself from the threat of death or serious bodily harm, that defendant's belief was reasonable, and that defendant did not use excessive force or more force than necessary to protect himself from death or great bodily harm.[3] *See State v. Moore*, 363 N.C. 793, 796-97, 688 S.E.2d 447, 449-50 (2010). Defendant failed to sufficiently demonstrate that, absent instructions on the aggressor doctrine, the jury would not have rejected his claim of self-defense for other reasons.

On appeal defendant mainly focused on the evidence that tended to show he was not the aggressor. The jury, however, could have rejected defendant's claim of self-defense for other reasons. The State did not solely rely on the theory that

---

[3] Perfect self-defense also requires that the defendant not be the aggressor in the fray, *see State v. Moore*, 363 N.C. 793, 796-97, 688 S.E.2d 447, 449-50 (2010); however, as explained above, if there is no evidence that the defendant was the aggressor, the trial court should not instruct on that element. Here, if the trial court had not instructed on the aggressor doctrine, the jury would have had to find the other three elements exist to make a finding of perfect self-defense.

defendant was the aggressor, but offered evidence that tended to contradict defendant's evidence as to each of the other elements of self-defense as well. Defendant has failed to establish that, absent an instruction on the aggressor doctrine, the jury would have credited his account of the night's unfolding over other contrary testimony.

Defendant has not shown that "the jury probably would have returned a different verdict" if the trial court had not instructed the jury on the aggressor doctrine. *Lawrence*, 365 N.C. at 519, 732 S.E.2d at 335. Therefore, assuming, without deciding, that the trial court's instruction on the aggressor doctrine was erroneous, we hold that the error does not rise to the level of such fundamental error as to constitute plain error.

For the reasons stated herein, we find no reversible error in the trial court's instructions to the jury and thus reverse the decision of the Court of Appeals. The remaining issue determined by the Court of Appeals is not before us, and the court's decision on that matter remains undisturbed.

REVERSED.