STATE OF NORTH CAROLINA v. BOBBY OSMOLD CURRY

No. COA01-1242

(Filed 1 October 2002)

**1. Confessions and Incriminating Statements— plea negotiations—no authority—no offer made**

The trial court did not err in a prosecution for indecent liberties with a student, statutory rape and statutory sexual offenses by denying defendant's motion to suppress statements to law enforcement officers where defendant contended that the statements were made in the course of plea negotiations and were thus inadmissible under N.C.G.S. § 8C-1, Rule 410, but the assistant district attorney made clear that she had no authority to negotiate a plea and no offer was laid on the table.

**2. Evidence— prior sexual offenses—common plan or scheme**

The trial court did not err in a prosecution for indecent liberties with a student, statutory rape, and statutory sexual offenses by allowing witnesses to testify about prior sexual activities with defendant where the ages of the victims, the manner in which defendant pursued them and gained their trust, and the sexual conduct were all sufficiently similar to be probative of defendant's common plan or scheme. N.C.G.S. § 8C-1, Rule 404(b).

Appeal by defendant from judgments dated 15 June 2001 by Judge Ronald E. Spivey in Forsyth County Superior Court. Heard in the Court of Appeals 13 August 2002.

*Attorney General Roy Cooper, by Assistant Attorney General Anne M. Middleton, for the State.*

*J. Clark Fischer for defendant appellant.*

GREENE, Judge.

Bobby Osmold Curry (Defendant) appeals judgments dated 15 June 2001 entered consistent with a jury verdict finding him guilty of statutory rape, four counts of statutory sexual offense, and five counts of taking indecent liberties with a student.

On 19 May 2000, a warrant for Defendant's arrest was issued on charges of indecent liberties with a student and indecent liberties with a child, C.C., a fourteen-year-old who attended the school where

Defendant coached. Between 14 August and 6 November 2000, Defendant was indicted for statutory rape, statutory sexual offenses, and indecent liberties with a student. On 19 January 2001, Defendant filed a motion to suppress statements made by him during the "course of plea discussions with the District Attorney from the Prosecuting Authority," which he claimed were protected by N.C. Gen. Stat. § 8C-1, Rule 410.

At the pre-trial motion hearing, Defendant's attorney, David Freedman (Freedman)[1], testified he had spoken to an assistant district attorney sometime after the issuance of initial arrest warrant. At this time, the assistant district attorney told him "there may be possibilities of [Defendant] pleading to a string of indecent libert[y] [charges] although that was not an offer." The assistant district attorney emphasized she was "not in a position to make an offer because [the district attorney] had taken an interest in the case and anything . . . would have to go through him." She further stated that "in order to consider [an] offer, [Defendant] would have to be completely cooperative in the investigation." Subsequently, Freedman advised his client that "if he [were] fully cooperative, . . . hopefully [they] could work out a plea to something less than a charge of statutory rape." Defendant's attorney stressed that they did not have a firm offer and therefore "not a guarantee." Thereafter, Defendant agreed to a police interview. During the interview, held 16 June 2000, Defendant admitted to having fondled and digitally penetrated C.C. four to six times but denied having had vaginal intercourse with her. Defendant repeated this statement when he took part in a polygraph test on 5 July 2000.

The two law enforcement officers who interviewed Defendant on 16 June 2000 testified at the motion hearing that Defendant signed a "Miranda Rights Waiver" before they spoke to him. They also explained that they did not have any authority from the district attorney to negotiate a plea and did not convey to Defendant the impression they possessed such authority. Furthermore, neither Defendant nor Freedman attempted to negotiate with the law enforcement officers for a plea in any way.

At the conclusion of the motion hearing, the trial court denied Defendant's motion to suppress his statements to the law enforcement officers because (1) Defendant's motion to suppress was un-

---

1. Freedman represented Defendant during the period testified to but not thereafter.

timely and (2) Rule 410 had not been violated. The trial court also denied Defendant's motion to have certain witness testimony excluded pursuant to N.C. Gen. Stat. § 8C-1, Rules 404(b) and 403. In support of this ruling, the trial court found that the testimony Defendant sought to have excluded was

> strikingly similar, in that the ages of the proffered witnesses . . . , the sexual activity engaged in by the witnesses and . . . Defendant[,] the nature of the relationship between the witnesses and . . . Defendant[,] . . . Defendant's position of leadership, trust or care with the witness[es][,] even the locale of some of the sexual activities was remarkably similar to those on trial . . . .

The trial court further noted that "due to the nature of the matters, they [were] not so remote in time as to make them inadmissible" and found the evidence proper to "prove intent . . . and common plan or scheme."

At trial, C.C. testified she attended Forsyth Country Day School (Forsyth) when she met Defendant. Defendant, who was the track coach at Forsyth, had asked C.C. in August 1999 to join the track team and help manage the football team. These activities brought C.C. into contact with Defendant "on a fairly regular basis." In time, Defendant began to drive C.C. home after practice on a daily basis and often waited at her home until C.C.'s mother arrived. On these occasions, Defendant frequently brought his seven-year-old son along, whom C.C. would babysit from time to time. Sometime around February 2000, Defendant began an intimate relationship with C.C., which included vaginal intercourse, oral sex, and digital penetration.

Over Defendant's objection, the State introduced into evidence Defendant's incriminating statements made to law enforcement on 16 June and 5 July 2000. The State also presented testimony, again over Defendant's objection, of five other females with whom Defendant had had sexual contact of the type allegedly engaged in with C.C. dating as far back as 1990. The females were between thirteen and fourteen years old at the time of the alleged acts, and Defendant was usually in some position of authority over them. Four of the five females were involved in athletics with Defendant. Similar to C.C.'s experience, Defendant began his relationship with two of them when both were high school students and recruited by Defendant to join the track team he coached. Defendant offered all five females

STATE v. CURRY

[153 N.C. App. 260 (2002)]

transportation to and from school and asked three of them to baby-sit his son.

The issues are whether the trial court erred: (I) in denying Defendant's motion to suppress his statements to law enforcement on 16 June and 5 July 2000 and (II) in allowing the State to offer 404(b) witnesses to testify about their sexual activities with Defendant.

I

[1] Assuming without deciding that Defendant's motion to suppress his statements to law enforcement was timely, we will analyze the substantive ground for the trial court's denial of Defendant's motion. The admissibility of statements made during plea negotiations is governed by N.C. Gen. Stat. § 8C-1, Rule 410. This rule is identical to Fed. R. Evid. 410. Thus, the case law that evolved under the federal rule is highly illustrative for our purposes.

According to Rule 410, "[a]ny statement made in the course of plea discussions with an attorney for the prosecuting authority which do not result in a plea of guilty or which result in a plea of guilty later withdrawn" is inadmissible at trial. N.C.G.S. § 8C-1, Rule 410(4) (2001). Hence, "[p]lea negotiations, in order to be inadmissible, must be made in negotiations with a government attorney or with that attorney's express authority." *United States v. Porter*, 821 F.2d 968, 977 (4th Cir. 1987); *United States v. Grant*, 622 F.2d 308, 313 (8th Cir. 1980) (statements made to law enforcement officials who had received express authority from the prosecuting attorney to make an offer to a defendant are statements made "in the course of plea discussions"). "In addition, conversations with government agents do not constitute plea discussions unless the defendant exhibits a subjective belief that he is negotiating a plea, and that belief is reasonable under the circumstances." *Sitton*, 968 F.2d at 957; *United States v. Robertson*, 582 F.2d 1356, 1367 (5th Cir. 1978). In ascertaining a defendant's subjective belief, "[t]he trial court must focus searchingly on the record to determine whether the accused reasonably had such a subjective intent, examining all of the objective circumstances." *Robertson*, 582 F.2d at 1367.

In this case, Freedman was told by an assistant district attorney "there may be possibilities of [Defendant] pleading to a string of indecent libert[y] [charges] although that was not an offer." The assistant district attorney made it clear that she had no authority to negotiate a plea bargain but indicated that the State might consider an offer if

Defendant cooperated in 'the investigation. Based on this conversation, Freedman told Defendant to cooperate in the hope that they "could work out a plea to something less than a charge of statutory rape."

In light of the assistant district attorney's representation that she lacked the authority to enter plea discussions, there is no evidence to substantiate a reasonable, subjective belief on the part of Defendant that he was "negotiating a plea" by cooperating with law enforcement. "Negotiation is [the] process of submission and consideration of offers until [an] acceptable offer is made and accepted," *Black's Law Dictionary* 1036 (6th ed. 1990), but necessarily requires the parties engaged in any type of negotiation to be authorized to do so. Moreover, "[p]lea bargaining implies an offer to plead guilty upon condition." *Porter*, 821 F.2d at 976-77. Neither the assistant district attorney, provided she had or purported to have the authority, made an offer to Defendant nor did Freedman or Defendant express an intent to plead guilty to certain charges. As no offer had been laid on the table, Defendant's statement to law enforcement could not have been made "in the course of plea discussions with an attorney for the prosecuting authority." Accordingly, the trial court did not err in denying Defendant's motion to suppress.

## II

**[2]** Rule 404(b) is designed to prevent the admission into evidence of other crimes, wrongs, or acts "to prove the character of a person in order to show that he acted in conformity therewith. [Such evidence] may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake, entrapment or accident." N.C.G.S. § 8C-1, Rule 404(b) (2001); *see State v. Coffey*, 326 N.C. 268, 278-79, 389 S.E.2d 48, 54 (1990) (describing Rule 404(b) as a rule of inclusion). " 'When evidence of the defendant's prior sex offenses is offered for the proper purpose of showing plan, scheme, system, or design . . . the "ultimate test" for admissibility has two parts: First, whether the incidents are sufficiently similar; and second, whether the incidents are too remote in time.' " *State v. Harris*, 140 N.C. App. 208, 212, 535 S.E.2d 614, 617 (citation omitted), *appeal dismissed and disc. review denied*, 353 N.C. 271, 546 S.E.2d 122 (2000). If, however, " 'similar acts have been performed continuously over a period of years, the passage of time serves to prove, rather than disprove, the existence of a plan.' " *State v. Frazier*, 344 N.C. 611, 616, 476 S.E.2d 297, 300 (1996) (defendant's prior acts of sexual abuse, which occurred continuously over a period

STATE v. CURRY

[153 N.C. App. 260 (2002)]

of approximately twenty-six years and in a strikingly similar pattern, were properly admitted into evidence to show a common plan or scheme) (citation omitted). Moreover, in instances where such evidence is offered to prove a defendant's intent to commit the similar sexual offense charged, our Supreme Court has stated a rule of liberal admission. *See State v. White*, 331 N.C. 604, 612, 419 S.E.2d 557, 561-62 (1992) (citing *State v. Boyd*, 321 N.C. 574, 578, 364 S.E.2d 118, 120 (1988) (evidence the defendant was found in bed naked with a young female relative on a prior occasion was admissible to demonstrate the defendant's intent or scheme to take sexual advantage of young female relatives left in his custody)).

The admissibility of evidence under Rule 404(b) is further "subject to the weighing of probative value versus unfair prejudice mandated by [N.C. Gen. Stat. § 8C-1,] Rule 403." *State v. Agee*, 326 N.C. 542, 549, 391 S.E.2d 171, 175 (1990). Because evidence that is probative of the State's case is necessarily prejudicial to the defendant, the question remains one of degree. *Coffey*, 326 N.C. at 281, 389 S.E.2d at 56. "Whether to exclude evidence under Rule 403 is a matter left to the sound discretion of the trial court." *Id.*

In this case, the ages of the victims, the manner in which Defendant pursued them and gained their trust through a combination of sports, babysitting, and rides to and from school and the sexual conduct in which Defendant had engaged with the victims are all sufficiently similar to be probative of Defendant's intent and common plan or scheme. These acts, which were continuously performed over the course of ten years cannot be said to be too remote in time to be inadmissible. *See Frazier*, 344 N.C. at 616, 476 S.E.2d at 300. Furthermore, in light of the strong similarities between the alleged acts, the probative value of admitting the evidence far exceeds any unfair prejudice to Defendant. *See* N.C.G.S. § 8C-1, Rule 403 (2001). As such, the trial court properly ruled on the admissibility of the witnesses' testimony.

No error.

Judges TIMMONS-GOODSON and HUNTER concur.