IN THE COURT OF APPEALS OF NORTH CAROLINA

 No. COA18-565

 Filed: 18 December 2018

Caldwell County, No. 17 CRS 50087

STATE OF NORTH CAROLINA

 v.

JOSEPH HARLON GODFREY

 Appeal by defendant from judgment entered 8 December 2017 by Judge

Gregory R. Hayes in Caldwell County Superior Court. Heard in the Court of Appeals

31 October 2018.

 Attorney General Joshua H. Stein, by Assistant Attorney General Elizabeth J.
 Weese, for the State.

 Gillette Law Firm PLLC, by Jeffrey W. Gillette, for defendant-appellant.

 ZACHARY, Judge.

 Defendant Joseph H. Godfrey appeals from a judgment entered upon a jury

verdict finding him guilty of first-degree sex offense with a child. Defendant argues

that his guilty verdict resulted from the trial court having improperly allowed the

jury to hear evidence of his prior bad acts, and that therefore he is entitled to a new

trial. We find no error.

 Background

 Defendant is the victim’s uncle by marriage. In December 2016, the victim

reported to the Caldwell County Sheriff’s Office that Defendant had sexually
 STATE V. GODFREY

 Opinion of the Court

assaulted her “many times” when she was a child, including a final incident that took

place on or about 1 May 2004 when the victim was twelve years old (the “May 2004

incident”). This was the first time that the victim had told anyone about the assaults.

According to the victim, she decided to come forward in 2016 because “[i]t was brought

to [her] attention . . . that there was someone within the family, at a young age, that

was groped.” Detective Roger Crosby was assigned to the case.

 In an attempt to obtain evidence to corroborate the victim’s account some

twelve years after the fact, the victim “volunteered to the idea of placing a recording

device upon her person and approaching [Defendant] at his residence . . . in order to

get him to have a casual conversation about what happened to her when she was

young.” Detective Crosby agreed to this plan, which the victim successfully executed

on 5 January 2017. The victim recorded Defendant making various incriminating

statements, and Defendant was thereafter arrested and indicted for one count of first-

degree sex offense with a child, specifically for the May 2004 incident. Defendant was

tried before a jury beginning on 4 December 2017.

 At trial, the victim testified that Defendant had served as her “sole care

provider” during childhood while her father was incarcerated for fifteen years and

her mother “worked two and three jobs to support [the victim and her] brother.” In

May 2004, the victim was staying with Defendant at his home and was twelve years

old. The victim recalled that she was outside playing with her cousins and that when

 -2-
 STATE V. GODFREY

 Opinion of the Court

she ran inside to grab something to drink, Defendant came up to her, stuck his hands

in each of her pockets, and pulled her into the laundry room. The victim testified that

Defendant “removed my clothing. He removed my underwear. He removed my pants.

And he set me up on top of his washing machine.” According to the victim, Defendant

then “chose to use his middle finger . . . on his hand, and insert[ed] it in my vagina.”

This happened for “a few minutes” until the victim “started to freak out on

[Defendant],” because he had “pulled his finger out” and “his pants all the way down,”

which the victim believed meant that he was about to rape her. At that point the

victim kicked Defendant and ran. As she ran out of the front door, she fell and broke

her wrist. The victim testified that she began crying and that a few moments later

Defendant came up behind her and asked her what was wrong. The victim did not

remember anything further about the incident.

 The victim was able to estimate the date on which the May 2004 incident

occurred based on the date that the doctor treated her broken wrist, which was just

before her brother’s birthday. The victim also testified that she kept getting urinary

tract infections after the incident, but that she never told anyone why because she

“was scared and . . . had nobody that [she] felt like [she] could trust.” The victim

testified that there was no further sexual contact between her and Defendant after

the May 2004 incident.

 -3-
 STATE V. GODFREY

 Opinion of the Court

 In addition, the victim testified concerning the “bed incident,” which occurred

about a month or two prior to the May 2004 incident, but was not charged in

Defendant’s indictment. The victim testified that she stayed the night at Defendant’s

house and was sharing a bed with her younger cousin, Defendant’s daughter. While

her cousin was asleep, Defendant “comes and crawls in the . . . bed where I am, to be

beside of me . . . . And he started feeling on my legs, and at that time, he stuck his

middle finger in my vagina.” This lasted “a few minutes” and afterward she “freaked

out, just as I always do. I got up and ran towards the kitchen area . . . and he went to

the bathroom that was closest to the bed, to wash his hands.” She did not tell anyone

about that incident because, she explained, “I was scared. And once again, I didn’t

have anyone that I actually trusted that would believe me.”

 The trial testimony of the victim included another incident that she claimed

occurred about two years earlier, when the victim was staying with Defendant at his

place in Lick Mountain (the “Lick Mountain incident”). That incident was not charged

in Defendant’s indictment. The victim explained the Lick Mountain incident as

follows:

 If I’m not mistaken, I did have strep, and I had a high fever
 and a very nauseous stomach. And I’d asked him
 repeatedly to call my mother to come get me, and he would
 not do so. He started wrest—like, he started off tickling me
 on the floor, and he went to, like, wrestle around with me
 and carried me to his bed.

 -4-
 STATE V. GODFREY

 Opinion of the Court

When Defendant got her to his bed, “[h]e, once again, penetrated my vagina with his

middle finger.” The incident lasted “just a few minutes” and she did not tell anybody

about it because she “didn’t have trust that people would believe [her].”

 Detective Crosby’s report following the victim’s initial statement did not

include any indication that the victim had disclosed that digital penetration occurred

during the May 2004 incident. Defendant’s daughter—with whom the victim said she

was sharing a bed during the bed incident—also testified at trial. Defendant’s

daughter testified that she had no recollection of anything similar to what the victim

had testified to, and that

 I’m a very light sleeper, and I think if she would have got
 up and run like she said, I would have definitely woke up.
 I had a little, single-size bed that my grandmother gave me.
 It’s a day bed, and so I could barely fit in it, let alone if she
 was with me, my dad. No way could he have fit.

 The State also offered the audio recording and transcript of the seventy-five

minute conversation between the victim and Defendant into evidence. The victim

eventually prompted Defendant to talk about their earlier sexual encounters by

telling Defendant that “I wish we would have, like, done more.” When she asked what

he remembered, Defendant responded, “[t]he first hand [ride] you ever took.” The

victim and Defendant proceeded to talk about the May 2004 incident, the bed

incident, and the Lick Mountain incident, each of which Defendant said he

remembered. Later in the conversation, Defendant told the victim that he “had a hole

 -5-
 STATE V. GODFREY

 Opinion of the Court

drilled in th[e] wall” at his Lick Mountain house and “used to watch [the victim] take

showers” in order to see her digitally penetrating herself. The victim also testified at

trial about watching pornography with Defendant on multiple occasions prior to the

May 2004 incident, during which Defendant “would put my hand on his erected

penis.” Defendant admitted in the recorded conversation that he remembered

watching pornography with the victim when she was young.

 Defendant repeatedly objected to the introduction of evidence of the bed

incident and the Lick Mountain incident, as well as various portions of the recorded

conversation. Defendant argued that the challenged evidence must be excluded under

Rule 404(b) of the North Carolina Rules of Evidence because it was being offered to

influence the jury “to simply convict him based on all of the other allegations that

he’s not charged with.” Additionally, Defendant argued that the circumstances

surrounding the May 2004 incident and the circumstances surrounding the two other

incidents were not sufficiently similar and were too remote in time from one another,

thus rendering the admission of this evidence unduly prejudicial under Rule 403. The

State, however, argued that the prior incidents were admissible under Rule 404(b)

because they were being offered to show “a common plan or scheme,” rather than

Defendant’s propensity to commit the charged offense. The State noted that each of

the incidents involved digital penetration, all occurred “in a very compact area of

 -6-
 STATE V. GODFREY

 Opinion of the Court

time,” and that the victim’s young age “show[ed] the escalation for grooming” for

sexual acts.

 The trial court concluded that Defendant’s prior acts could be admitted for the

proper purpose of showing, inter alia, that Defendant had a “common plan or scheme”

to digitally penetrate the victim. The trial court found that both of the earlier

incidents were sufficiently similar to, and not too remote in time from, the May 2004

incident for which Defendant was on trial. The court concluded that while the prior

acts were “of course prejudicial,” they were “more probative on the issue of whether

or not . . . there was a common plan or scheme and whether or not that relates to the

2004 incident.” The trial court therefore admitted evidence of each of the prior acts

into evidence. The trial court repeatedly instructed the jury that it was to consider

the evidence of Defendant’s prior acts solely for the limited purposes for which the

evidence was offered.

 The jury found Defendant guilty of first-degree sex offense with a child on 8

December 2017. Defendant was sentenced to 288 to 355 months’ imprisonment based

on the sentencing provisions in effect in 2004. Defendant gave oral notice of appeal

in open court.

 On appeal, Defendant argues that his judgment must be vacated and a new

trial ordered because the trial court erroneously permitted the jury to base its

 -7-
 STATE V. GODFREY

 Opinion of the Court

conviction upon the improper introduction of evidence of Defendant’s prior acts. We

disagree.

 Standard of Review

 The standards of review from a trial court’s Rule 404(b) and 403 rulings are

distinct from one another. State v. Beckelheimer, 366 N.C. 127, 130, 726 S.E.2d 156,

159 (2012). “We review de novo the legal conclusion that the evidence is, or is not,

within the coverage of Rule 404(b). We then review the trial court’s Rule 403

determination for abuse of discretion.” Id.

 Rule 403 and Rule 404(b)

 Evidence is generally admissible so long as it is relevant. N.C. Gen. Stat. § 8C-

1, Rule 402 (2017). “Relevant evidence” is defined as evidence having “any tendency

to make the existence of any fact that is of consequence to the determination of the

action more probable or less probable than it would be without the evidence.” Id. §

8C-1, Rule 401 (2017). Even where relevant, however, Rule 404 limits the

introduction of character evidence, including evidence of a defendant’s past crimes,

wrongs, or acts. Id. § 8C-1, Rule 404 (2017). Pursuant to Rule 404(b), “[e]vidence of

other crimes, wrongs, or acts is not admissible to prove the character of a person in

order to show that he acted in conformity therewith.” Id. § 8C-1, Rule 404(b).

Otherwise, however, Rule 404(b) is “a clear general rule of inclusion,” and will allow

such evidence to be admitted so long as it is relevant to any fact or issue other than

 -8-
 STATE V. GODFREY

 Opinion of the Court

“to show that the defendant has the propensity or disposition to commit an offense of

the nature of the crime charged.” State v. Coffey, 326 N.C. 268, 278-79, 289 S.E.2d

48, 54 (1990). For example, Rule 404(b) contains a non-exclusive list of other proper

purposes “for which evidence of prior acts may be admitted, including ‘motive,

opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake,

entrapment or accident.’ ” Beckelheimer, 366 N.C. at 130, 726 S.E.2d at 159 (quoting

N.C. Gen. Stat. § 8C-1, Rule 404(b)). Moreover, “prior acts testimony need not involve

incidents for which the defendant was actually convicted of a crime.” State v. West,

103 N.C. App. 1, 10, 404 S.E.2d 191, 197-98 (1991).

 “ ‘[T]his Court has been markedly liberal in admitting evidence of similar sex

offenses by a defendant.’ ” Beckelheimer, 366 N.C. at 130, 726 S.E.2d at 159 (quoting

State v. Bagley, 321 N.C. 201, 207, 362 S.E.2d 244, 247 (1987), cert. denied, 485 U.S.

1036, 99 L. Ed. 2d 912 (1988)). This is particularly true “when those offenses involve

the same victim as the victim in the crime for which the defendant is on trial.” State

v. Miller, 321 N.C. 445, 454, 364 S.E.2d 387, 392 (1988). “Such evidence is often

viewed as showing a ‘common scheme or plan’ by the defendant to sexually abuse the

victim.” State v. Faircloth, 99 N.C. App. 685, 689, 394 S.E.2d 198, 201 (1990) (citing

State v. Shamsid-Deen, 324 N.C. 437, 444, 379 S.E.2d 842, 847 (1989)).

 Nevertheless, “[a]lthough relevant” for a proper purpose under Rule 404(b),

Rule 403 provides that “evidence may be excluded if its probative value is

 -9-
 STATE V. GODFREY

 Opinion of the Court

substantially outweighed by the danger of unfair prejudice, confusion of the issues,

or misleading the jury.” N.C. Gen. Stat. § 8C-1, Rule 403 (2017). It is in this context

that the admissibility of evidence under Rule 404(b) is initially “constrained by the

requirements of similarity and temporal proximity.” State v. Al-Bayyinah, 356 N.C.

150, 154, 567 S.E.2d 120, 123 (2002). While the level of similarity between the acts

need not “rise to the level of the unique and bizarre,” State v. Green, 321 N.C. 594,

604, 365 S.E.2d 587, 593, cert. denied, 488 U.S. 900, 102 L. Ed. 2d 235 (1988),

 [f]actual disparity or the stretch of time dilute
 commonalities, and the probative value of the analogy
 attaches less to the acts than to the character of the actor.
 Conversely, testimony regarding a[n] [act] that was
 virtually identical committed less than seventy-two hours
 before the [act] for which the defendant is on trial lends
 more ballast to the act than to the character of the actor.

State v. Price, 326 N.C. 56, 69, 388 S.E.2d 84, 91 (internal citation and quotation

marks omitted), vacated and remanded on other grounds, 498 U.S. 802, 112 L. Ed. 2d

7 (1990). Thus, “[w]hen prior incidents are offered for a proper purpose, the ultimate

test of admissibility is whether they are sufficiently similar and not so remote as to

run afoul of the balancing test between probative value and prejudicial effect set out

in Rule 403.” West, 103 N.C. App. at 9, 404 S.E.2d at 197.

 Bed Incident and Lick Mountain Incident

 Defendant contends that it was error for the trial court to allow the jury to hear

testimony concerning the bed incident and the Lick Mountain incident because they

 - 10 -
 STATE V. GODFREY

 Opinion of the Court

“were not relevant and not sufficiently similar to the May 2004 incident,” and because

the “only purpose . . . was to portray [Defendant’s] bad character and imply his

propensity to act in conformity with such character.” We disagree.

 Defendant was indicted for violation of N.C. Gen. Stat. § 14-27.4 (2004), which

provided that “[a] person is guilty of a sexual offense in the first degree if the person

engages in a sexual act . . . [w]ith a victim who is a child under the age of 13 years

and the defendant is at least 12 years old and is at least four years older than the

victim.” N.C. Gen. Stat. § 14-27.4(a)(1) (2004). The trial court instructed the jury

that “[a] ‘sexual act’ means any penetration, however slight, by an object into the

genital opening of a person’s body.”

 All three incidents involved the same type of sexual act. The victim testified

that during the May 2004 incident Defendant “chose to use his middle finger . . . and

insert[ed] it in my vagina[.]” She similarly testified concerning the bed incident and

the Lick Mountain incident, stating that Defendant used his middle finger to

penetrate her, and that the May 2004 assault “was the same thing” that Defendant

did during those prior incidents. In the recorded conversation between Defendant and

the victim, Defendant told the victim that he had to use one finger because “[y]ou was

too small.” The victim also testified that the Lick Mountain incident, the bed incident,

and the May 2004 incident all occurred while she was staying with Defendant.

 - 11 -
 STATE V. GODFREY

 Opinion of the Court

 In short, the May 2004 incident, the bed incident, and the Lick Mountain

incident each involved the same victim, the same specific alleged mode of penetration,

and the same circumstance—while the victim was under Defendant’s supervision.

Thus, the bed incident and the Lick Mountain incident were sufficiently similar to

the May 2004 incident, and evidence of these incidents was relevant to show that the

May 2004 incident was part of a common scheme or plan by Defendant to take

advantage of the victim by digitally penetrating her while she was under his control.

See, e.g., Miller, 321 N.C. at 454, 364 S.E.2d at 392 (“The evidence that defendant

had committed another sex offense against the same child, his young son, . . . was

admissible under Rule 404(b).”); State v. Curry, 153 N.C. App. 260, 265, 569 S.E.2d

691, 695 (2002) (“[T]he ages of the victims, the manner in which Defendant pursued

them and gained their trust . . . [,] and the sexual conduct in which Defendant had

engaged with the victims are all sufficiently similar to be probative of Defendant’s

intent and common plan or scheme.”). Accordingly, evidence of the bed and Lick

Mountain incidents was properly admitted under Rule 404(b).

 Defendant next argues that testimony concerning the Lick Mountain incident

should have nevertheless been excluded because it was too remote in time from the

May 2004 incident, thereby diminishing its probative value in showing a common

scheme or plan. While Defendant is correct that the Lick Mountain incident is alleged

to have occurred two or three years prior to the May 2004 incident, we do not find

 - 12 -
 STATE V. GODFREY

 Opinion of the Court

that this stretch of time inherently rendered the evidence of the Lick Mountain

incident so remote in time as to eliminate its probative value. E.g., Curry, 153 N.C.

App. at 265, 569 S.E.2d at 695 (“These acts, which were continuously performed over

the course of ten years cannot be said to be too remote in time to be inadmissible.”).

This is particularly so in light of its striking similarity to the bed and May 2004

incidents. See, e.g., Faircloth, 99 N.C. App at 690, 394 S.E.2d at 201 (“[T]his case

involves three incidents of similar conduct against the same victim within a 28-month

span. We do not believe, on these facts, that the time period is so great as to erode the

relevance of the first two incidents to the charged offense.”); State v. Roberson, 93

N.C. App. 83, 85, 376 S.E.2d 486, 488 (“The intervening [five] years do not dilute the

similarities especially when considered in light of [the victim’s] testimony that [the]

defendant had touched her in the same way during the year before the trial.”), disc.

review denied, 324 N.C. 435, 379 S.E.2d 247 (1989).

 We likewise reject Defendant’s argument that admission of testimony

regarding the bed and Lick Mountain incidents was so “highly prejudicial” that the

trial court had to reject admission of the testimony pursuant to Rule 403. The trial

court concluded that evidence of the bed incident was “indeed, prejudicial[,] . . . but it

appears to be more probative on the 2004 allegation than it is prejudicial, and so that

will be admitted.” The trial court also concluded that evidence of the Lick Mountain

incident “appears to be more probative on the issue of whether or not the actual

 - 13 -
 STATE V. GODFREY

 Opinion of the Court

alleged offense occurred than it is prejudicial, because once again, it involved fingers

to the vagina.” Such determinations were fully within the trial court’s discretion, and

we find no abuse thereof. See State v. Stevenson, 169 N.C. App. 797, 801-02, 611

S.E.2d 206, 210 (2005) (“The exclusion of evidence under Rule 403 is a matter

generally left to the sound discretion of the trial court, which we leave undisturbed

unless the trial court’s ruling is manifestly unsupported by reason or so arbitrary it

could not have been the result of a reasoned decision[.]” (internal citations and

quotation marks omitted)). The trial court gave limiting instructions as to the

purpose for which the testimony was being admitted, and the allowance of testimony

concerning two additional incidents was not so cumulative or likely to mislead the

jury as to constitute an abuse of discretion. See, e.g., id. at 802, 611 S.E.2d at 210

(holding that the trial court did not abuse its discretion where it provided a limiting

instruction confining the permissible use of the prior acts testimony). Accordingly,

we find no error in the trial court’s admission of the testimony regarding the bed

incident and the Lick Mountain incident under Rule 403.

 Other Prior Bad Acts

 Next, Defendant argues that the trial court erred by allowing the jury to hear

(1) the portion of the recorded conversation in which Defendant stated that he “had a

hole drilled in th[e] wall” at his Lick Mountain house and “used to watch [the victim]

take showers”; (2) the portion of the recorded conversation in which Defendant asked

 - 14 -
 STATE V. GODFREY

 Opinion of the Court

the victim if she remembered “[t]he first hand [ride] you ever took”; and (3) the

recorded conversation and the victim’s testimony that Defendant had the victim

watch pornography with him on several occasions, during which Defendant “would

put [the victim’s] hand on his erected penis.”

 First, Defendant argues that the trial court conducted an erroneous inquiry

concerning the admissibility of evidence that Defendant “had a hole drilled in th[e]

[bathroom] wall.” The trial court concluded that this act was “similar to the prior

events. I’m not sure about temporal proximity, but I’m not sure I have to make that

decision on this issue, because the shower incident comes in by his own statement, by

a statement against interest.”

 Defendant argues, and correctly so, that this prior act falls within the scope of

Rule 404(b), thus requiring analysis thereunder. See, e.g., State v. Doisey, 138 N.C.

App. 620, 626, 532 S.E.2d 240, 244-45, disc. review denied, 352 N.C. 678, 545 S.E.2d

434 (2000). However, Defendant offers no specific argument as to why that prior act,

in light of the particular circumstances of this case, was inadmissible under Rule

404(b) or should have been excluded under Rule 403. Accordingly, any argument to

that point is deemed abandoned. See State v. Joiner, 237 N.C. App. 513, 522, 767

S.E.2d 557, 563 (2014) (“It is not the job of this Court to make [the] Defendant’s

argument for him.” (citing Viar v. N.C. Dep’t. of Transp., 359 N.C. 400, 402, 610,

S.E.2d 360, 361 (2005)); N.C.R. App. P. 28(b)(6); see also State v. Turner, 239 N.C.

 - 15 -
 STATE V. GODFREY

 Opinion of the Court

App. 450, 455, 768 S.E.2d 356, 359 (2015) (“[A] trial court’s ruling . . . should not be

set aside merely because the court gives a wrong or insufficient reason for it.”

(brackets omitted)).

 Next, Defendant argues that it was error for the trial court to admit

Defendant’s recorded statement to the victim that he remembered “[t]he first hand

[ride] you ever took.” The date of the incident to which this statement referred was

not provided. However, Defendant notes that when taken in conjunction with the

victim’s testimony, assuming “this was a form of penetration, it must have referred

to the incident at Lick Mountain or something prior to that.” Defendant thus argues

that, “without indication of temporal proximity, the jury could only take this as

evidence of propensity on [Defendant’s] part[,]” and that it should have therefore been

excluded. However, because of the similarity of this description to the other events,

as discussed supra, we conclude that the trial court did not err in admitting this

statement on the grounds of temporal proximity. Moreover, “[w]hile remoteness of

another offense is relevant to its admissibility to show modus operandi or a common

scheme or plan, remoteness usually goes to the weight of the evidence, not its

admissibility.” State v. Hall, 85 N.C. App. 447, 451, 355 S.E.2d 250, 253 (internal

citation omitted), disc. review denied, 320 N.C. 515, 358 S.E.2d 525 (1987).

 Finally, Defendant argues that it was error for the trial court to admit the

evidence that the victim and Defendant watched pornography together. Defendant

 - 16 -
 STATE V. GODFREY

 Opinion of the Court

maintains that “[w]hile these statements may have been relevant to some generalized

scheme or plan to gain sexual gratification from [the victim], they do not appear to

bear on the critical issue in this case—whether or not [Defendant] penetrated [the

victim’s] genitalia.” However, even assuming that this was admitted in error,

Defendant cannot establish that he was prejudiced thereby.

 In order to warrant a new trial, a defendant must show that he was prejudiced

by the alleged error; that is, that there exists “a reasonable possibility that had the

error not been committed a different result would have been reached at the trial.”

State v. Hernandez, 188 N.C. App. 193, 204, 655 S.E.2d 426, 433 (2008) (citing N.C.

Gen. Stat. § 15A-1443). Where “abundant evidence” exists to otherwise support a

defendant’s guilty verdict, “the admission of evidence, even though technically

incompetent, will not be held prejudicial when [the] defendant does not affirmatively

make it appear that he was prejudiced thereby or that the admission of the evidence

could have affected the result.” State v. Williams, 275 N.C. 77, 89, 165 S.E.2d 481,

489 (1969).

 Here, there was overwhelming evidence presented to the jury establishing that

Defendant digitally penetrated the victim during the May 2004 incident. This

included evidence of the bed and Lick Mountain incidents showing a common scheme

or plan to perform the same act, the victim’s detailed testimony describing the May

2004 incident, and Defendant’s various admissions in the recorded conversation. The

 - 17 -
 STATE V. GODFREY

 Opinion of the Court

sum of this evidence was more than sufficient to support the jury’s guilty verdict of

first-degree sex offense against a child. Thus, even assuming, arguendo, that the trial

court erred in concluding that the statements that Defendant watched pornography

with the victim were admissible under Rule 404(b) and Rule 403, we conclude that

Defendant was not prejudiced thereby.

 Conclusion

 For the reasoning contained herein, Defendant received a fair trial, free from

error.

 NO ERROR.

 Judges CALABRIA and TYSON concur.

 - 18 -