An unpublished opinion of the North Carolina Court of Appeals does not constitute controlling legal authority. Citation is disfavored but may be permitted in accordance with the provisions of Rule 30(e)(3) of the North Carolina Rules of Appellate Procedure.

IN THE COURT OF APPEALS OF NORTH CAROLINA

No. COA25-584

Filed 18 March 2026

Durham County, Nos. 21CR050573-310, 21CR050574-310

STATE OF NORTH CAROLINA

      v.

MARIO BLANDING

Appeal by defendant from judgment entered 22 May 2024 by Judge Lora C. Cubbage in Durham County Superior Court. Heard in the Court of Appeals 25 February 2026.

> *Attorney General Jeff Jackson, by Special Deputy Attorney General Marc Bernstein, for the State*
>
> *Appellate Defender Glenn Gerding, by Assistant Appellate Defender Heidi Reiner, for defendant.*

ARROWOOD, Judge.

Mario Blanding ("defendant") appeals from judgment entered after jury trial, where he was convicted on two counts of first-degree murder. Defendant argues that the trial court committed plain error in both its jury instructions and its admission of evidence under Rules of Evidence 403 and 404(b). For the following reasons, we

find no plain error and affirm the trial court's judgment.

## I.     Background

In support of the charges that defendant committed two murders on 3 February 2021, the State presented evidence of a series of events beginning 18 January 2021 concluding with defendant's arrest on 18 February 2021. The following narrative is derived from the testimony and exhibits introduced at trial.

### A.     Statement of Facts

Michael Parker ("Mr. Parker") testified that, on 18 January 2021, he stopped for gas at Service Foods on Wake Forest Highway, where defendant approached him from behind, knocked him to the ground, and broke his hand. During the altercation, defendant stole Mr. Parker's Hi-Point .45-caliber pistol, but Mr. Parker was able to release and throw away the clip. Detective Jeffrey Cockerham ("Det. Cockerham") from the Durham County Sheriff's Office reported to the scene. Mr. Parker reported his pistol's theft and provided its serial number. However, although Mr. Parker knew defendant, he did not report his identity at the time. Det. Cockerham testified that he reviewed security video footage that captured the incident.

The events resulting in the deaths of Antone "Bam" Baines ("Mr. Baines") and Corey "Murder" Gooch ("Mr. Gooch") began at about 5:40 p.m. on 3 February 2021. Defendant was the only eyewitness and he testified in his own defense as follows: He was in his car listening to music in the driveway of his family's house on Cushman Street in Durham. Mr. Gooch, driving a 2003 Chevy Tahoe with Mr. Baines in the

passenger seat, parked across the street in front of Mr. Baines' house. Defendant approached Mr. Gooch to negotiate the sale of a gun while Mr. Baines went inside to get his phone charger. When Mr. Baines returned, defendant and Mr. Gooch continued to negotiate, and defendant asked Mr. Baines about the mother of his children, who was once involved with defendant. This caused an argument, in which defendant claimed that Mr. Baines threatened him, making him fear for his life. Defendant claims that he and Mr. Baines tussled with the gun and he fired at Mr. Baines because his life was in jeopardy. Defendant also testified that Mr. Gooch threatened him and tussled for the gun before defendant shot him. Defendant testified that a dark blue car with tinted windows then came down the street and that he feared a drive-by shooting. He claimed that he panicked, pushed Mr. Gooch over to the passenger seat of the Chevy Tahoe, and drove away from the scene. Defendant claimed he did not take anything from either victim's person. Mr. Baines was shot four times and Mr. Gooch was shot twice.

Simultaneous with other nearby police, Officer Anthony Ramos ("Officer Ramos") arrived minutes later. Upon seeing Mr. Baines' body, Officer Ramos observed a bullet projectile fall from one of his wounds and saw that his pockets were turned inside out. His body cam footage captures a woman who emotionally describes an "old school" burnt orange car that left the scene and says "Mario Blanding got something to do with it. That's all I know." From the scene, Officer Ramos located a digital record of a 2009 incident placing defendant and the two victims at the

Blandings' Cushman Street address.

Officer Derek Hamilton ("Officer Hamilton"), another Durham Police Department officer, spoke with Mr. Gooch's mother, who said, "Whoever shot Bam jumped in the car with my son and pulled out of here." Other neighbors on the scene provided the make and model of Mr. Gooch's car and again named defendant. Officer Hamilton testified that, after releasing a BOLO ["be on the lookout"] dispatch for Mr. Gooch's vehicle, he received information that the car was located on the 500 block of Hardee Street, approximately a mile away.

Defendant drove the Tahoe to his ex-girlfriend's apartment building and left it there. The apartment building's security footage showed the Tahoe pulling into a parking spot at 5:53 p.m. and a man in a neon green sweatshirt exiting the vehicle, returning to the vehicle once, and then at 6:01 p.m. driving away in a white Kia SUV. Defendant's ex-girlfriend, Markia Ellis, testified that he arrived wearing a "loud green sweatshirt" and said, "I messed up. I want to give my son a kiss." After he left, her son said, "I seen blood on his shirt," and she found that the keys to her Kia SUV were missing.

Corporal Michael Mues from the Durham Police K-9 Unit was the first officer to arrive on Hardee Street and see the Chevy Tahoe with Mr. Gooch's unresponsive body inside with gunshot wounds to the head. Durham Police Crime Scene Investigation Officer Rachel Murphy recovered a 9-mm caliber shell casing, two .45-caliber cartridge casings, Mr. Baines' debit card, and Mr. Gooch's wallet and debit

card. Officers recovered several items from Mr. Gooch's person, including over $1,000.00 cash. Neither Mr. Baines' nor Mr. Gooch's cell phones were ever recovered. However, cell phone records showed that defendant's phone remained near Cushman Street while the victims' phones traveled to the vicinity of Hardee Street.

In the early morning of 7 February 2021, Durham Police Officer Evans responded to the Extended Stay on Ivy Creek Boulevard, where the stolen Kia was located. He unsuccessfully circulated the area because the suspect had fled on foot. Bodycam footage of Officer Jordan Sines ("Officer Sines") chasing the Kia's driver does not capture the driver's face, but it records Officer Sines ordering the driver to leave the car and asking him if he is armed, the driver fleeing on foot with a gun, and Officer Sines running after him and calling for back-up. Officers collected evidence from the Kia, including a blood stain on the driver's seat cushion, a box of .45-caliber ammunition, an open box of contact lenses with defendant's name on the accompanying shipping receipt, and an envelope addressed to defendant at his family home on Cushman Street.

On the evening of 9 February 2021, security cameras outside Habibi Mart on Holloway Street captured a man leaving the store and entering a red Chevy Malibu, whereupon defendant approaches. Defendant reaches into the car and a physical struggle between the men ensues, until defendant fires a gun at him twice and the man rushes into Habibi Mart. Defendant spends about 20 seconds in the front seat of the Chevy, but does not drive it away; instead he wipes down the steering wheel

and leaves on foot. The man returns to the Chevy, appears to yell and point at someone in the distance, and drives away. Police located a cartridge case, spent cartridges, and a trail of blood leading into the store.

On 18 February 2021, a resident of Apogee Drive reported a man lying out on a lawn in the cold. Durham Fire Department and paramedics arrived and found defendant sprawled out facedown in the cold and refusing to roll over. While the team tried to roll him onto their stretcher, Paramedic John Penta ("Mr. Penta") saw a firearm in his hand and pinned it to defendant's chest until police arrived. Police were able to secure the firearm, which was both loaded and chambered. They recovered the Hi-Point .45-caliber pistol which Mr. Parker reported stolen and a magazine with several types of .45 caliber bullets. The shell casings recovered on Cushman Road and outside the Habibi Mart were all fired from this Hi-Point .45-caliber pistol.

### B. 404(b) Evidence Hearings

On 15 February 2021, defendant was indicted on two counts of first-degree murder in the deaths of Mr. Baines and Mr. Gooch, on the bases of premeditation and deliberation and felony murder. The case came to trial in the Durham County Criminal Superior Court before the Honorable Lora Cubbage on 13 May 2024.

On 15 May 2024, between opening arguments and the prosecution's case-in-chief, the State informed the court that it would present testimony from Mr. Parker as a 404(b) witness. When the court asked the State for the purpose of his testimony,

the State answered, "It will be identity," and summarized Mr. Parker's evidence. The defense objected "just on 403 grounds." The court replied, "Okay. All right. Objection denied. . . . that testimony can come in." The State then said, "Deputy Cockerham would testify too as the officer that responded that got the serial number," to which the defense responded, "Same objection." The Court replied, "That's denied. That can come in." Exhibits to accompany this testimony were admitted without objection.

In another 404(b) hearing on 17 May 2024, the State informed the court that it would "put on evidence related to what I described in the opening statement as the situation at the convenience store that's basically an attempted car jacking. . . . six days after the murder, two days after the car [the white Kia] is recovered" referring to the 9 February 2021 incident outside Habibi Mart, describing in detail the content of related exhibits. The State added, "[T]his is relevant because it is evidence of a plan, preparation, modus operandi, and also intent," arguing that it echoed the evidence that "Corey Gooch was forced into the passenger seat of his car" and that defendant "attempted to take this car without permission." The State argued that evidence of the incident should be admitted because it was probative and "linked" because it is "sufficient to show that it was him, that it does support a proper purpose, that it is sufficiently similar based on temporal proximity, the physical proximity. And it is more probative than prejudicial." When the court asked if he was "going for identity as well," the State responded,

Identity falls under modus operandi. So we would. And at

> this point, his identity is still an issue, right, even though he has claimed self-defense? That evidence isn't in front of the truth. So our courts have held that modus operandi does flow into identity, because you are able to identify based on these kind of common scheme and – and mode of operation.

The defense objected under Rule 403 grounds and asked for a limiting instruction. The court allowed it: "The purpose for the state is to show identification as well as a scheme and a plan and a modus operandi."

### C.     Jury Instructions

During the charge conference, defendant's counsel requested a self-defense instruction and said he would not request that a felony murder instruction not be given. He agreed that the felony murder instructions should be associated with the underlying felony of robbery. The court offered to instruct on felony murder, first-degree murder, second-degree murder, and voluntary manslaughter, with a self-defense instruction after each. However, defendant's counsel requested that the court read a self-defense instruction "just once" and "after all the criminal charges." The State said, "It has to be so that they understand it wouldn't apply to the felony murder." The court replied, "I can add those words . . . after the felony murder instructions. I can add that one sentence. Self-defense is not to be considered in the felony murder consideration." Defendant's counsel replied, "True." The court then said it would follow "as closely as possible" similar instructions we approved in *State v. Jackson*, 293 N.C. App. 135 (2024), *review denied*, 387 N.C. 609 (2025). Defendant's

counsel lodged no objection to these instructions.

The court gave essentially identical instructions twice in full, for the charges as to each deceased victim: "You may find that Mario Blanding is guilty of first-degree murder either on the basis of malice, premeditation and deliberation, or under the first-degree felony murder rule, or both." After explaining the elements of first-degree murder, malice, premeditation and deliberation, as well as self-defense and defensive force, the court added:

> Blanding is not entitled to the benefit of self-defense if he was the aggressor with the intent to kill or inflict serious bodily harm . . . . Blanding is also not entitled to the benefit of self-defense if he was committing or escaping after the commission of the felony of robbery with a firearm and there was an immediate causal connection between Blanding's use of force and his felonious conduct.

The court then instructed on felony murder and second-degree murder, and in instructing on self-defense, repeated the above language to explain the circumstances under which defendant would not be "entitled to the benefit of self-defense." The court did the same in its instructions on voluntary manslaughter.

After deliberations, the jury convicted defendant on two counts of first-degree murder based on premeditation and deliberation and felony murder. Defendant gave oral notice of appeal.

## II.    Discussion

On appeal, defendant contends that the trial court plainly erred by admitting under Rule 404(b) the State's evidence about the events at Service Foods on

18 January 2021 and Habibi Mart on 9 February 2021, and in giving "an inaccurate and misleading self-defense instruction that failed to comport with the law and facts of this case." We address his two arguments in turn.

## A.     Admission of 404(b) Evidence

North Carolina Rule of Evidence 404(b) provides: "Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that [the person] acted in conformity therewith." N.C.G.S. § 8C-1, Rule 404(b) (2019). However, it may "be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake . . . ." *Id.* "We review *de novo* the legal conclusion that the evidence is, or is not, within the coverage of Rule 404(b)." *State v. Beckelheimer*, 366 N.C. 127, 130 (2012).

Rule 404(b) is a "general rule of inclusion." *State v. Al-Bayyinah,* 356 N.C. 150, 154 (2002) (quotes omitted). However, admission is here "constrained by the requirements of similarity and temporal proximity[.]" *Beckelheimer*, 366 N.C. at 131. Accordingly, while similarities between the charged crime and the 404(b) crime need not "rise to the level of the unique and bizarre," there must be "some unusual facts present in both crimes that would indicate that the same person committed them." *Id.* (citations and internal quotation marks omitted). To determine if 404(b) evidence was properly admitted, we examine the similarities identified by the trial court, not the differences between the crime charged and the proffered evidence. *State v.*

*Wilson-Angeles*, 251 N.C. App. 886, 893 (2017) (citations omitted).

Rule 403 supplies an additional limitation on a trial court's ability to admit evidence under Rule 404(b): "Evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." N.C.G.S. § 8C-1, Rule 403 (2019). Once a trial court weighs the likely probative and prejudicial value of evidence one party offers over the opposing party's objection, we review only for abuse of discretion. *Beckelheimer,* 366 N.C. at 130. Under this deferential standard, we disturb the court's decision that the evidence's probative value is not outweighed only if it "crosses the line from potentially reasoned to necessarily arbitrary." *State v. Hembree*, 368 N.C. 2 (2015). Lastly, a trial court can "guard[ ] against the possibility of prejudice" with instructions that the jury consider the evidence "only for the limited [permissible] purposes[.]" *State v. Stevenson*, 169 N.C. App. 797, 802 (2005).

1.  Evidence Regarding the 18 January 2021 Incident at Service Foods

Here, the State offered evidence concerning defendant's altercation with Mr. Parker under the Rule 404(b) identity exception. Where 404(b) evidence is admitted to prove identity, two requirements must be met. "First, the identity of the defendant must be an issue in the case." *State v. Thomas*, 310 N.C. 369, 373 (1984). Second, "the circumstances of the two crimes [must] be such as to tend to show that the crime charged and another offense were committed by the same person." *Id.* (citation and

quotation marks omitted). Though the identity of a crime's perpetrator is always a material fact, "identity is not always in issue." *State v. White*, 101 N.C. App. 593, 600 (1991) (citations omitted). Therefore, extrinsic 404(b) evidence is admissible to prove identity only "where the accused is not definitely identified." *State v. Williams*, 82 N.C. App. 281, 284 (1986) (citation omitted). "Unless the defendant presents alibi evidence, evidence of other crimes should not be admitted to show identity." *Id.* (cleaned up) (quotes and identity omitted).

The identity of the person who shot Mr. Gooch and Mr. Baines was never at issue in this case. Defendant's counsel told the court that he would be presenting a self-defense theory right away, on the first morning of trial while introducing himself to Judge Cubbage. Also, both parties' opening arguments occurred before the parties' discussion of this evidence's admissibility. Therefore, the question whether this evidence was properly admitted here is simply answered. To introduce this evidence as probative of identity, the perpetrator's identity must have been in issue. Accordingly, because defendant had no alibi and always admitted that he shot Mr. Gooch and Mr. Baines, the admission of evidence about the Service Foods incident as probative of identity was erroneous.

2. <u>Evidence Regarding the 9 February 2021 Incident at Habibi Mart</u>

404(b) evidence about the shooting and attempted carjacking at Habibi Mart was admitted "to show identification as well as a scheme and a plan and a *modus operandi*."

Where a party argues that its 404(b) evidence shows a similarity of *modus operandi* with the charged offense, this falls under the identity exception. *See State v. Moses*, 350 N.C. 741, 759 (1999) (quoting *State v. Carter*, 338 N.C. 569, 588 (1994) (holding that "[t]he other crime may be offered on the issue of [the] defendant's identity as the perpetrator when the *modus operandi* of that crime and the crime for which [the] defendant is being tried are similar enough to make it likely that the same person committed both crimes.")) Because identity was not at issue, this admission was erroneous insofar as it was probative of *modus operandi* and therefore identity.

Determining whether the evidence was properly admitted to show a common scheme or plan poses different questions: "First, whether the incidents are sufficiently similar; and second, whether the incidents are too remote in time." *State v. Curry,* 153 N.C. App. 260, 264, (2002) (internal quotation marks omitted) (alteration in original). Sufficiently similar evidence will "logically establish a common plan or scheme to commit the offense charged, not merely to show the defendant's character or propensity to commit a like crime." *State v. Willis,* 136 N.C. App. 820, 822–23 (2000) (citation omitted). A witness's testimony about a defendant's prior robbery, shooting, and threats was not too remote in a trial for murder and firearm offenses where only two months elapsed between the prior crime and the shooting of the murder victim. *State v. Christian*, 180 N.C. App. 621, 627 (2006).

Here, remoteness presents no obstacle to admission, as the event occurred

within a week of the killings. However, because the court made no findings comparing the two incidents, we are unable to "examine the similarities identified by the trial court." *Wilson-Angeles*, 251 N.C. App. at 893. Nevertheless, the record makes clear that these incidents involved sufficient similarity "beyond the characteristics inherent to most" crimes of this type, i.e. armed carjackings. *Al-Bayyinah*, 356 N.C. at 155–56. Here, "unusual facts [were] present in both crimes that would indicate that the same person committed them." *Beckelheimer*, 366 N.C. at 131. Offering this evidence for admission, the State explained:

> There are two shell casings recovered related to this scene. One is found on the ground outside of the convenience store. Another shell casing is recovered from the victim's car. They are both .45 caliber. They were forensically examined and matched the gun that is taken off of him and also matched the bullets that were found -- or the shell casings found next to Mr. Baines and Mr. Gooch.

This forensic evidence, showing the firing of the same stolen firearm at the victims of separate carjacking events, is "unusual" forensic evidence which logically establishes similarity sufficient for admission to show a common plan or scheme.

### 3. Admission Would Have Been Proper On Other Grounds

Because we must shortly review the erroneous admission of the Service Foods evidence for plain error, it is worthwhile to pause and briefly discuss a crucial consideration in Rule 404(b) analysis. We are satisfied that, although it was erroneous to admit 404(b) evidence as probative of identity in this case, this evidence would have been properly admissible on other grounds.

The statutory list of admission purposes "is not exclusive." *State v. White,* 340 N.C. 264, 284, *cert. denied,* 516 U.S. 994 (1995). As a "general rule of inclusion," *Al-Bayyinah,* 356 N.C. at 154, Rule 404(b) allows the admission of any evidence "relevant to any fact or issue other than the defendant's propensity to commit the crime." *White,* 340 N.C. at 284. We have long established that evidence is admissible to show "the chain of circumstances or context of the charged crime . . . if the evidence of other crimes serves to enhance the natural development of the facts or is necessary to complete the story of the charged crime for the jury." *Id.*

On appeal, defendant repeatedly contests the State's use of 404(b) evidence to show he "had been on some sort of month-long violent 'rampage.'" But where the key issue was whether the shooting was deliberate and premeditated and/or pursuant to an armed robbery, the evidence was both sufficiently relevant to issues other than propensity and sufficiently probative of the natural and contextual development of facts and "chain of circumstances" around the Cushman Street shooting to outweigh unfair prejudice. Admissible forensic evidence from the Cushman Street and Habibi Mart crime scenes linked those events to the same pistol. Further admissible evidence established that defendant was apprehended with a .45 caliber pistol linked to these crime scenes, and which was registered stolen. Testifying in his defense, defendant claimed he was in the process of selling this stolen firearm to Mr. Gooch when he shot in self-defense.

Evidence that he stole the pistol is not probative of the propensity to use it in

a first-degree murder, but it constitutes evidence of the origins and procurement of this stolen murder weapon, which necessarily "enhance[d] the natural development of the facts" and "complete[d] the story of the charged crime for the jury." *Id.* Thus, the State was entitled to inform the jury about this first temporal link in the "chain of circumstances." Furthermore, the court issued a limiting instruction.

Thus, because evidence that defendant stole the murder weapon was not probative of his propensity to commit first-degree murder, as opposed to a killing in self-defense, and because the theft was necessarily and intrinsically interwoven with subsequent events contextualizing the deaths of Mr. Gooch and Mr. Baines, evidence about the incident would have been properly admissible. Likewise, we conclude that the trial court did not abuse its discretion in deciding under Rule 403 that the probative value of the interwoven evidence regarding the origins of the firearm outweighed any prejudicial effect such evidence might have had against defendant.

### B.    Plain Error Review of the Admitted Evidence

Our appellate rules provide that, "[t]o preserve an issue for appellate review, a party must have presented to the trial court a timely request, objection, or motion, stating the specific grounds for the ruling the party desired the court to make if the specific grounds were not apparent from the context." N.C. R. App. P. 10(a)(1) (2021). "To be timely, an objection to the admission of evidence must be made at the time it is actually introduced at trial." *State v. Ray*, 364 N.C. 272, 277 (2010) (citation and quotation marks omitted). It is therefore insufficient to rely on objections lodged pre-

trial or outside the presence of the jury. *Id.* Defendant's counsel objected to the admission of evidence about the Service Foods and Habibi Mart incidents only under Rule 403, rather than Rule 404(b), and did not object when the evidence was introduced before the jury. Accordingly, this Court is limited to reviewing its admission for plain error. N.C. R. App. P. 10(a)(4).

To show plain error, defendant must first show that a fundamental and "grave" error occurred at trial, amounting to "a denial of a fundamental right of the accused." *State v. Odom*, 307 N.C. 655, 660 (1983) (citation omitted). Defendant then must show both that the error "had a probable impact on the outcome, meaning that absent the error, the jury probably would have returned a different verdict" and that the "error is an exceptional case," requiring a showing that it "seriously affects the fairness, integrity, or public reputation of judicial proceedings." *State v. Reber*, 386 N.C. 153, 158 (2024) (citations and quotation marks omitted). On the "probable impact" prong, defendant must meet a high bar. "The test examines the state of all the evidence except for the challenged evidence and asks whether, in light of that remaining evidence, the jury probably would have done something different." *Id.* at 162. "In ordinary English usage, an event will 'probably' occur if it is 'almost certainly' the expected outcome; it is treated as synonymous with words such as 'presumably' and 'doubtless.'" *Id.* at 158.

This is not a close case. Defendant fails to show that the jury would have "almost certainly" found him not guilty by reason of self-defense had the jury not

heard evidence about the pistol's theft. First, we have already discussed that, although it was erroneous to admit evidence of the Service Foods incident to prove identity, this evidence would nevertheless survive Rule 404(b) and Rule 403 analysis on at least one other basis. Therefore, the fairness and integrity of this proceeding was not affected. Second, the State's evidence was so extensive, voluminous, and various that the sum impact of excluding the Service Foods evidence would have been *de minimus*. The jury would still have heard that defendant possessed the murder weapon throughout this series of incidents, that it was stolen, that he was trying to sell it to Mr. Gooch, that it was later fired in the failed carjacking at Habibi Mart, and that it was found on defendant's person when police finally apprehended him. Thus, defendant has failed to show that the erroneous admission of this evidence as probative of identity therefore rendered his conviction at trial an "exceptional case" under our plain error analysis.

### C. Jury Instructions

Defendant next argues that the court's felony murder disqualifying instruction was "not legally correct" and attributes numerous related errors to the trial court. "[T]he trial court has a duty 'to instruct the jury on all substantial features of a case raised by the evidence.'" *State v. Fletcher*, 370 N.C. 313, 325 (2017) (quoting *State v. Shaw*, 322 N.C. 797, 803 (1988)). Here, defendant did not object to the jury instructions at trial. Consequently, our review is again limited to plain error. N.C. R. App. P. 10(a)(4) (2021).

First, defendant argues that "[a]n instruction on causal nexus is only required if the State has some evidence that but for the taking felony, the use of defensive force would not have been necessary." Defendant asserts that "[t]here is no dispute the alleged takings only occurred after the use of force[,]" so "the alleged takings could not have been the proximate cause that gave rise to the need for defensive force, and there was no immediate causal nexus."

Here, the jury was "entitled to disbelieve the testimony of [the] [d]efendant." *State v. Barr*, 218 N.C. App. 329 (2012). The State presented ample circumstantial evidence to support the jury's conclusion that the killings occurred during a continuous transaction with an armed robbery. Moreover, that evidence is uncontested: Defendant possessed the stolen firearm throughout the series of events, he shot both victims multiple times, and he fled the scene in the Chevy Tahoe Mr. Gooch drove. Accordingly, the challenged instruction was warranted.

Second, defendant argues that the felony disqualifier instruction was "misleading as given" because it did not define "immediate causal connection" for the jury and should have repeated the pattern jury instructions, which provide that, for the felony disqualifier to apply, "the State must prove that but for the [felony] . . . the confrontation resulting in . . . the death of the victim would not have occurred."

We disagree. As long as the jury receives legally correct instructions on all substantial features of the case, use of the pattern instructions is not obligatory. *State v. Garcell*, 363 N.C. 10, 49 (2009); *Fletcher*, 370 N.C. at 325. Furthermore, this

question has been addressed by our Supreme Court in *State v. McLymore*, 380 N.C. 185, 194 (2022). The Court offered a "permissible jury instruction" explaining the felony disqualifier where a defendant claims self-defense after using deadly force during an armed robbery:

> [T]he State must prove beyond a reasonable doubt, among other things, that the Defendant did not act in self-defense, or that the Defendant was attempting to commit, committing, or escaping after the commission of the felony of robbery with a dangerous weapon if the Defendant did act in self-defense *but that there was an immediate causal connection between Defendant's use of force and his felonious conduct.*

*McLymore*, 380 N.C. at 200 (emphasis added). The instructions here were both legally correct and intended to match substantially this approved instruction:

> The State must prove that Blanding did not act in self-defense, or failing this, this, that Blanding was the aggressor with the intent to kill or to inflict serious bodily harm upon Antone Baines, or that Blanding was committing or escaping after the commission of the felony of robbery with a firearm if Blanding did act in self-defense, *but that there was an immediate causal connection between Blanding's use of force and his felonious conduct.*

The approved language is repeated throughout the instructions, wherever applicable. Therefore, defendant's preferred pattern jury instruction was not required, and the repeated use of the approved language was neither erroneous nor prejudicial.

Third, defendant argues that the court erred in instructing the jury that where there is no causal nexus, self-defense can be a defense to felony murder. Defendant argues that this is so because his claimed use of deadly force was justified and

occurred outside of any continuous transaction, under which it would be immaterial whether he formed the intent to take the Chevy Tahoe before or after the killings.

We disagree. Perfect self-defense can be a defense to the felony underlying a felony murder charge, thereby defeating the felony murder charge. *State v. Juarez*, 369 N.C. 351, 354 (2016). But self-defense is always inapplicable where that underlying felony is armed robbery. *Jackson*, 293 N.C. App. at 141. Furthermore, the jury had ample alternative options here: it could have convicted defendant of first-degree murder and not felony murder, or it could have found him not guilty by reason of self-defense. Nevertheless, the jury did not believe defendant's testimony and determined that the State proved beyond a reasonable doubt that he killed Mr. Baines and Mr. Gooch pursuant the specified underlying felony, in addition to premeditation and deliberation. This means that, on these charges, the State established the "immediate causal nexus" between the use of force and the taking, and the jury determined this pursuant to instructions explicitly approved in Supreme Court precedent. Accordingly, there was neither error in this jury instruction nor prejudice resulting therefrom.

Accordingly, defendant's final two arguments are unavailing. He argues that "for each of the trial court's self-defense instructional errors, there is a reasonable probability of a different result." But there was neither individual nor cumulative error in these jury instructions, and therefore, defendant is unable to meet the plain error standard. He also argues that his counsel was ineffective in failing to object to

the self-defense instructions. Not so. To succeed here, defendant must point to conduct falling "below an objective standard of reasonableness." *Strickland v. Washington*, 466 U.S. 668, 688 (1984). Where the trial court issues proper jury instructions after a charge conference in which both parties were heard, defense counsel has no reasonable reason to object.

In sum, defendant has failed to show error, much less plain error, resulting from the trial court's jury instructions.

## III.    Conclusion

For the above reasons, we uphold the trial court's judgment.

NO PLAIN ERROR.

Chief Judge DILLON and Judge STADING concur.

Report per Rule 30(e).